B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>AZURE DEVELOPMENT, INC. | **DEFENDANTS**<br>TRIANGLE CAYMAN ASSET COMPANY |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Charles A. Cuprill, P.S.C. Law Offices<br>356 Fortaleza Street, (2nd Floor)<br>San Juan, P.R. 00901 | **ATTORNEYS** (If Known)<br>Marini Pietrantoni Muñiz, LLC<br>250 Ponce De León Ave. Suite 900<br>San Juan, P.R. 00918 |
| **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Extension of the Automatic Stay of Section 362(a)(1) and (3) of the Bankruptcy Code to Plaintiff Shareholder Fideicomiso Valdes Acevedo, its affiliate Cost Control, Inc. and its president Alfonso Valdes García under Sections 105(a), 362(a)(1) and (3), 541, 1106 and 1107

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☒ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $    N/A |

Other Relief Sought

None

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>AZURE DEVELOPMENT, INC. | BANKRUPTCY CASE NO.<br>22-00462 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Puerto Rico | DIVISION OFFICE<br>San Juan | NAME OF JUDGE<br>Enrique S. Lamoutte |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>N/A | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re:** <br><br> **AZURE DEVELOPMENT, INC.** <br><br> Debtor | Case No. 23-00462-ESL <br><br> Chapter 11 |
| **AZURE DEVELOPMENT, INC.** <br> Plaintiff, <br><br> v. <br><br> **TRIANGLE CAYMAN ASSET COMPANY** <br> Defendant | Adversary Proceeding No. 23-_____ <br><br> Re: Extension of Automatic Stay |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW, Azure Development, Inc. ("Azure"), through its undersigned counsel, and respectfully states and requests:

**I. THE PARTIES**

1. Plaintiff is a corporation organized in accordance with the laws of the Commonwealth of Puerto Rico, engaged in the development of the following described properties (the "Properties") into an integrated multi-residential project (the "Project"):

(a) Property No. 4969: 53,686.37 square meters, rustic parcel of land at Mata de Platano de Platano Ward, Luquillo, Puerto Rico, Cadaster No. 092-000-003-03-998.

(b) Property No. 5722: 20,413.18 square meters, rustic parcel of land at Mata de Platano Ward, Luquillo, Puerto Rico, Cadaster No. 092-055-006-18-000.

2. Defendant is an exempted company organized and existing under the laws of the Cayman Islands with its designated office at Maples Corporate Services Limited, P.O. Box 309, Ugland Haouse, Grand Cayman, KY1-1104, Cayman Islands, and with principal business office at 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102. The name and postal address of

Defendant's administrator in the Commonwealth of Puerto Rico for the assets purchased by Defendant is Capital Crossing Puerto Rico, LLC, with address at Ave. Ponce de León #221, 12th Floor, Suite 1204, San Juan, Puerto Rico 00917.

## II. JURISDICTION

3. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § § 1334 and the General Order of Referral of Title II Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1994 (Torruella, C. J.). This is a core proceeding in accordance to 28 U.S.C. § 157(b)(2)(A) and (O).

4. Venue lies in this district pursuant to 28 U.S.C. § 1341.

5. The predicate acts giving rise to this complaint are set forth in 11 U.S.C. §§ 105(a), 362(a)(1) and (3); 541, 1106 and 1107.

6. In compliance with Rule 7008 of the Federal Rules of Bankruptcy Procedure (F.R.B.P.), Plaintiff consents to the entry of judgment by this Court in the captioned case.

## III. FACTS

7. On February 17, 2023, Plaintiff filed a voluntary petition for relief under 11 U.S.C. Chapter 11 (the "Petition") and as of that date has been managing its affairs as a debtor-in-possession pursuant to 11 U.S.C. § 1107.

8. As a debtor-in-possession and subject to the limitations on a trustee in a case under 11 U.S.C. Chapter 11 and such limitations or conditions as the Court prescribes, Plaintiff has all the rights, other than the right to compensation under 11 U.S.C. §330, and powers, and is to perform all the functions and duties, except the duties specified in 11 U.S.C. §§1106 (a)(2),(3) and (4) of a Trustee serving in a case under 11 U.S.C. Chapter 11.

9. Plaintiff's shareholder is Fideicomiso Valdés Acevedo (the "Trust") a trust established pursuant to the laws of Puerto Rico on April 8, 2008 with Jaime Del Valle Cruz as its trustee, its beneficiaries being Alfonso Enrique Valdés Acevedo and María del Pilar Valdés Acevedo.

2

10. The Trust is also the holder of the shares of Cost Control Company, Inc. ("Cost Control") a corporation organized and authorized to do business pursuant to the laws of Puerto Rico with address at Ave. Ponce de León, Esquire Building, 5th Floor, Suite 501, Vela Street, Hato Rey, Puerto Rico 00918.

11. Alfonso Valdés García ("Mr. Valdés") is Plaintiff's and Cost Control's president and chief executive officer who must continue to devote his productive time to the Project, involving a daily activity on his part.

12. In turn Cost Control is Plaintiff's financial arm for the development and completion of the Project and Plaintiff's reorganization proceedings.

13. Mr. Valdés' activities in managing and developing of the Project include assuring that federal and state permits for its development and completion are in place; compliance with all applicable federal and state laws, rules and regulations; coordination with all professionals required for said compliance in order to do so on a daily basis and visits therewith to the corresponding regulatory agencies; dealings with realtors for the development of marketing programs; with general contractors for the determination of costs and submissions by persons and organizations opposing the Project, who on a recurrent basis utilize the media as a tool therefor; meetings with prospective purchasers and presentations thereto; the preparation of blueprints, designs, submission of evidence of the permits for the Project and other matters related thereto.

14. In addition, it is Mr. Valdés who meets with legislators, mayors, heads of agencies and other executives regarding the Project. A mistake in one of the requests for permits not only can cause an adverse effect on the governmental agency involved and on the development of the Project, but can also result in powering its opponents in their quest to impede the same.

15. The following are some additional examples of Mr. Valdés' required involvement

3

in the Project:

a) Delineation of the Maritime Zone. The Properties being of beachfront nature, this is the most important permit. Mr. Valdés is at present undertaking the necessary steps to obtain the approval of this permit. The Department of Natural Resources of Puerto Rico ("PRDNR") is slow in the processing of permits and fearful of project opponents. The majority of the correspondence from governmental agencies is directed to Mr. Valdés.

b) On March 25, 2023, at 7:00 a.m., Mr. Valdés was on the Properties supervising the installation of the signs required by PRDNR, which if not properly placed, or if their contents do not comply with the rules and regulations in effect, the permit could be withheld making the selling or development of the Properties impossible.

c) The other permit being presented to a governmental agency is the Jurisdictional Determination of the U.S. Army Corps of Engineers (the "Corps"). This permit determines the waters that belong to the United States of America. Its preparation is very complex, Mr. Valdés chose and deals with the engineers who prepare and present the application to the Corps. It is Mr. Valdés who continuously follows up on the permit.

d) In order to expedite the Jurisdictional Determination (the "JD"), Mr. Valdés is in contact with the offices of Commissioner Jenniffer González and Congresswoman Nydia Velazquez. The JD may take up to 9 months, a period that Mr. Valdés is attempting to shorten.

e) Mr. Valdés interviews and chooses experts for the permitting process, meeting with them regularly. Moises Sánchez Loperena is one of them. Attorney Fernando Molini, with whom Mr. Valdés speaks 3 or 4 times a day, is another expert in permitting, public hearings, and necessary notifications.

f) He also deals with the four (4) Infrastructure Permits, having chosen EBP Design Group for this task. These permits have to be in place for any development of the

4

Properties to take place. Once one of them expires, it must be renewed. They expire at different intervals.

g) Correspondence with firms showing interest in the Project after the filing of the Chapter 11 petition.

h) The publication of the permits or their request must sometimes appear in local papers. Mr. Valdés is in charge of that task and of assuring that they comply with the corresponding rules and regulations.

i) When a governmental agency or a possible purchaser requires a topographical map or a schematic site plan or any other related matter, Mr. Valdés requests EBP Design Group's assistance, meeting with them to approve their work.

j) Oficina de Gerencia de Permiso ("OGP"). This is the agency that approves preliminary and final construction permits. In May of this year, Plaintiff must begin the renewal process of the Movement of Earth Phase I Permit which expires in July 2023. Mr. Valdés has already commenced this very complex process choosing the personnel to assist him in doing so.

k) Legal advise. It is sometimes necessary at the request of a governmental agency, a potential client or for Debtor's own benefit, to require expert legal advice. It is Mr. Valdés who chooses the lawyer to be used after evaluating the needs and counsel's expertise.

l) Marketing and realtors in the USA. Debtor has two (2) realtors in the United States. Mr. Valdés has travelled to Atlanta to meet with one of them. Together therewith the marketing plan is prepared. Mr. Valdés speaks with the realtors several times a week analyzing the marketing results.

m) Mr. Valdés coordinates all meetings with realtors in Puerto Rico and with prospective clients. The preparation for the meetings, the items to be discussed, pricing, type of units

5

to be built, etc. are all discussed by Mr. Valdés.

n) One of the most frustrating jobs is dealing with environmentalists "ambientalistas", some of which are genuinely concerned, but others, despite Debtor having all permits in place, and following all the rules and regulations, do not want to see a project developed, choosing all media resources, forcing replies thereto, without antagonizing them, and to be on the lookout. These persons exert a lot of influence on state governmental agencies and Mr. Valdés must meet, choose and work with firms that are experts in "crisis management".

16. Since Plaintiff has no income at the present time, Cost Control subsidizes and pays for all of Debtor's expenses related to the development of the Properties, including the advise and assistance of attorneys, engineers, agronomists, and other experts required for planning and engineering, environmental licenses and permits, and other costs related the Project. Cost Control will also subsidize the cost of Plaintiff's Chapter 11 proceedings.

17. On November 21, 2003, Plaintiff entered into a loan and security agreement (the "Loan Agreement") with Banco Bilbao Vizcaya Argentaria ("BBVA") in the principal amount of $1,725,000.00 (the "Loan") with interest to accrue at a fluctuating rate equal to the Libor Rate plus 300 basis points per annum with a maturity date of December 31, 2014, for the development of the Properties, encumbered by a first mortgage in the amount of the Loan to secure the same.

18. On December 18, 2012, BBVA merged with Oriental Bank ("Oriental") and on September 28, 2015, Defendant acquired the Loan from Oriental on a discounted basis.

19. Plaintiff's president, Mr. Valdés, Cost Control, Debtor's affiliate and the Trust, Plaintiff's shareholder, are guarantors of the Loan (the "Guarantors").

20. The Properties encumbered by the mortgages in guarantee of the Loan, are necessary for Plaintiff's reorganization under Chapter 11 as Debtor's only asset to be sold as such or as the Project in the regular course.

6

21. Prior to the filing of the Petition, and after its merger with BBVA, Oriental filed a collection of monies and foreclosure of mortgage action against Debtor and the Guarantors with the Court of First Instance of Puerto Rico, Superior Section of Fajardo, in the case now styled *Triangle Cayman Asset Company v. Azure Development, Inc. et. al.*, Case No. NSCI2015-00410 (the "State Court Action").

22. During the course of the State Court Action, Oriental sold the Loan to Defendant at a discount and Plaintiff timely raised that the sale was that of a litigious credit, Plaintiff being entitled to redeem the Loan for the amount paid therefor by Defendant, as provided for in Article 1425 of the Civil Code of Puerto Rico of 1930, 31 LPRA § 3950, then in full force and effect, Debtor exercising said rights to do so, depositing $153,289.74 with the State Court as the price of the sale of the Loan by Oriental to Defendant.

23. The continuance of Case No. NSCI2015-00410 against Mr. Valdés will force him to be engaged in the litigation thereof, with its adverse effects on Mr. Valdés' productive time and his well-being in having to defend the same, in fact an action directed to Plaintiff in Defendant's goal of foreclosing on the Properties and advantageously becoming its owner, appropriating to itself their value well in excess of Defendant's encumbrance thereon, which is detrimental to Plaintiff who needs for Mr. Valdés to dedicate his time and efforts to Debtor's reorganization by selling the Properties or achieving the culmination of the Project, free of the diversion which Case No. NSCI2015-00410 entails.

24. Similarly, Cost Control, Plaintiff's financial arm both for Plaintiff's reorganization in Chapter 11 and the culmination of the Project can't be at the risk by the continuance of Case No. NSCI2015-00410 directing its time and funds thereto and being at the risk of having its assets executed by Defendant, the death knell of the Project and Plaintiff's reorganization under Chapter 11 of the Bankruptcy Code.

25. On a similar view the continuance of Case No. NSCI2015-00410 against the

7

Trust, with the risk of an adverse judgment, could result in the collapse of Plaintiff, Cost Control, the Project and Plaintiff's Chapter 11.

### IV. CAUSE OF ACTION

26. Even when an action, as Case No. NSCI2015-00410, is not subject to the automatic stay of Section 362(a)(1) of the Bankruptcy Code as to some of the defendants, the bankruptcy courts retain the power to enjoin an act or action that would, as here, interfere with a debtor's reorganization or rehabilitation effort 3 Collier on Bankruptcy ¶ 362.04 (Richard Levin & Henry J. Sommer eds., 16th ed.)

27. The power of the bankruptcy courts to enjoin actions has long been recognized. See *In re Caesars Entm't Operating Co.*, 808 F.3d 1186 (7th Cir. 2015); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986)

28. That broad injunctive power is available under Section 105(a) of the Bankruptcy Code. Collier *Id.*

29. In the issuance of an injunction under Section 105(a) most courts have applied the traditional test for the granting thereof, which requires the movant to show:

   i. A substantial likelihood of success on the merits; (In the bankruptcy context, courts have construed this factor as requiring the showing of the debtor's ability to successfully reorganize. (See *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007), cert. denied, 128 S. Ct. 2080 (2008); *In re Phila. Newspapers, LLC*, 407 B.R. 606 (E.D. Pa. 2009); *In re Monroe Well Service, Inc.*, 67 B.R. 746 (Bankr. E.D. Pa. 1986))

   ii. That the movant will suffer irreparable injury unless an injunction issues;

   iii. That the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and

   iv. That the injunction would not adversely affect the public interest.

8

30. The above four factors are present in this case as:

(1) Plaintiff has the ability to successfully reorganize itself, which absent the extension of the automatic stay to Mr. Valdés, Cost Control and the Trust in Case No. NSCI2015-00410, will not be achievable due to the collapse of these three (3) indispensable parties to Plaintiff's successful reorganization;

(2) Unless the extension of Section 362(a) is granted to Mr. Valdés, Cost Control and the Trust, Plaintiff will suffer irreparable injury as its reorganization efforts would be totally impeded;

(3) The threatened injury to Plaintiff outweighs any damage to Defendant, which is none, as Defendant's claim will be paid in full, as the same is allowed by the Court, as part of Plaintiff's reorganization;

(4) The granting of the injunction is beneficial to the public interest as part of Puerto Rico's economic development, demanding developments such as the Project, intimately related to Puerto Rico's recovery from its economic problems, within the scope of Puerto Rico Oversight, Management and Economic Stability Act, by the creation of jobs and substantial investments.

**WHEREFORE**, it is respectfully requested that the automatic stay provisions of 11 U.S.C. § 362(a)(1) be extended to Mr. Valdés, Cost Control and the Trust by directing that the proceedings in Case No. NSCI2015-00410 be stayed against them.

San Juan, Puerto Rico, this 17th day of April 2023

*s/ CHARLES A. CUPRILL-HERNÁNDEZ*
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street - Second Floor
San Juan, PR  00901
Tel.: 787-977-0515
Fax:   787-977-0518
E-Mail: cacuprill@cuprill.com

9